| | |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) ) SOUTHEAST TITLE OF MURFREESBORO, ) LLC, et al., ) ) Defendants. ) | No. 3:13-01359 Chief Judge Haynes |

## AMENDED MEMORANDUM

Plaintiff, Aspen Specialty Insurance Company ("Apsen"), a North Dakota company with its principal place of business in New York, filed this action under the federal diversity jurisdiction statute, 28 U.S.C. §1332, against Defendants: Southeast Title of Murfreesboro, LLC, a Tennessee limited liability company; Carla Dillard, a Tennessee citizen; and First Community Mortgage, Inc. ("FCMI"), a Tennessee corporation with its principal place of business in Tennessee. (Docket Entry No. 1). Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202 to resolve whether the insurance policy issued by Plaintiff Aspen to Defendants Southeast Title and Dillard applies to claims arising out of Defendant FCMI's Tennessee state court action against Southeast Title, Dillard and other defendants, and seeks recoupment of costs and fees incurred in its defense of Southeast Title and Dillard in the underlying state action. The Southeast Title Defendants filed an answer. (Docket Entry No. 15).

At the initial case management conference on February 28, 2014, the Court, citing its concerns over factual disputes in the underlying state action involving claims of negligence and theft, administratively closed this action. (Docket Entry No. 20).

Before the Court is Plaintiff's motion to reopen and amend (Docket Entry No. 21), contending that Plaintiff Aspen should be allowed to amend its complaint to reflect that the insurance policy excludes from coverage claims based on the theft by a non-insured, specifically any claim that arises out of the theft or conversion of mortgage funds "whether the alleged acts involve the Insured or any other party" or any claim arising out of any alleged theft or conversion of mortgage funds "by any person, at any time, under any circumstance." (Docket Entry No. 1-1 at 9, ¶ E 11; at 14, ¶ GG). Plaintiff also contends that coverage is excluded for any claims that the insureds knew of or could have reasonably foreseen might give rise to a claim prior to the inception date of the policy.

In response (Docket Entry No. 23), Defendants contend that this action should not be reopened and should remain administratively closed pending the outcome of the underlying state court action as the underlying state court action asserts numerous grounds of liability, some of which invoke the coverage provisions of the policy, and the issue of indemnification hinges on disputed facts that must be decided in the underlying state court action. Defendants contend that the filing of an amended complaint at this stage is premature.

In its reply (Docket Entry No. 26), Aspen asserts that resolution of the claims in Aspen's declaratory judgment action depends on issues that will not be presented to the state court in the underlying action, that is, the state court will not consider whether the policy's theft exclusions apply or whether the Southeast Title had prior knowledge of the unlawful acts when it applied for the policy. Aspen also asserts that if abstention were proper, the Court should dismiss the action, as

dismissal allows a plaintiff to appeal and avoid a period of legal uncertainty. Aspen further asserts that actions seeking legal damages, such as recoupment, are protected from federal courts' abstention discretion.

### A. The State Action

In the proposed amended complaint (Docket Entry No. 21-1 at 35-43) in the underlying state action, the allegations relevant as to the Southeast Title Defendants are, in sum, as follows: (1) that Southeast Title and Dillard provided a title commitment letter to FCMI for the sale of a Tennessee property, and that Southeast Title served as the settlement/escrow agent for the subject loan; (2) that Southeast Title and Dillard negligently performed their closing and escrow duties; (3) that Southeast Title and Dillard breached their contract with FCMI under the closing instructions, request for titled commitment and settlement statements; (4) that Southeast Title and Dillard negligently made false representations to FCMI regarding the receipt and disbursement of funds into and out of the account established for the closing; and (5) that Southeast Title and Dillard breached their fiduciary duties to FCMI. Id. at ¶¶ 16, 32; 38-41; 44-45; 46-49; 50-52.

### B. The Federal Action

Plaintiff Aspen's proposed amended complaint alleges that the insurance policy excludes from coverage claims based on the theft by a non-insured and any claims that the insureds knew of or could have reasonably foreseen might have given rise to a claim prior to the inception date of the policy. In support, Plaintiff cites the "damages" definition that states, in relevant part:

> **Damages** means a compensatory monetary amount for which an **Insured** may be held legally liable, including judgments, awards, or settlements negotiated with the prior approval of the Company, provided that **Damages** shall not include:
>
> . . .

> Any claim for money which is based upon, arises out of or is in consequence of any theft, conversion, commingling, embezzlement or misappropriation by any person, at any time, under any circumstances or escrow, trust, mortgage or any other kind or type of money, funds securities, property, assets, or any negotiable instruments or documents, whether the alleged acts involve the **Insured** or any other party.

(Docket Entry No. 21-1, at 18-19, III E. 11).

Plaintiff also cites the theft exclusion that states:

> This Policy does not apply to any **Claim** based upon, arising out of, directly or indirectly, in whole or in part, or in any way involving:
>
> . . .
>
> Any actual or alleged theft, stealing, conversion, commingling, embezzlement or misappropriation of any kind of escrow, trust, mortgage or any other kind or type of money, funds securities, property, assets, or any negotiable instruments or documents by any person, at any time, under any circumstances.

Id. at 22, 24, IV. GG.

Lastly, Plaintiff cites the "prior knowledge" provision that provides, "Prior to the Inception Date of this Policy, no **Insured** knew or could have reasonably foreseen that such **Wrongful Act** might give rise to a **Claim**[.]" Id. at 16, I. D.

### C. Conclusions of Law

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act

as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" Id. at 287 (citations omitted). Thus, "[u]nder the Declaratory Judgment Act . . . the grant of declaratory judgment is discretionary with the trial court." Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co., 791 F.2d 460, 462 (6th Cir. 1986).

The Sixth Circuit has "held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits." Travelers Indem. Co. v. Bowling Green Professional Associates, PLC, 495 F.3d 266, 273 (6th Cir. 2007). Moreover, the Sixth Circuit has stated that it "'question[s] the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner.'" Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 816-17 (6th Cir. 2004) (quoting Am. Home Assur. Co. v. Evans, 791 F.2d 61, 63 (6th Cir.1986)). Further, declaratory judgment actions "'should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created.'" Id. at 812 (citation omitted). Of course, there is not "a per se rule against exercising jurisdiction in actions involving insurance coverage questions." Id. at 812-13.

To determine whether to entertain jurisdiction in a declaratory judgment action, the district court should consider whether the judgment "'will serve a useful purpose in clarifying and settling legal relationships in issue' and whether it 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Aetna Casualty & Sur. Co. v. Sunshine Corp., 74 F.3d 685, 687 (6th Cir. 1996) (quoting Grand Trunk W. R.R. Co. v. Consolidated Rail

5

Corp., 746 F.2d 323, 326 (6th Cir. 1984) (internal quotation marks and citation omitted)). Under these two broad principles, Court considers five factors to determine whether to entertain such an action:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

Scottsdale Ins. Co. v Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (quoting Grand Trunk, 746 F.2d at 326).

To determine the fourth factor, "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction," the Sixth Circuit has applied three sub-factors that bear on federalism concerns to be considered:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

Travelers, 495 F.3d at 271 (quoting Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000)).

6

As to the first two factors, as stated previously by the Court, the Court believes that based upon the allegations in the underlying action that a resolution of the proposed amended complaint in the federal action would benefit by a more fully developed factual record regarding the claims for theft and negligence in the underlying action. Moreover, Plaintiff Aspen's claim as to the Southeast Title Defendants' "prior knowledge" is a factual matter. At this juncture, the Court cannot determine "whether the declaratory action would settle the controversy" or "would serve a useful purpose in clarifying the legal relations in issue." Thus, the Court concludes that these two factors weigh in favor of the Defendants.

As to the third factor, "[t]he third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a '"natural plaintiff"' and who seem to have done so for the purpose of acquiring a favorable forum.'" Flowers, 513 F.3d at 558 (quoting AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir.2004)). Thus, "[t]he question is . . . whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." AmSouth, 386 F.3d at 789. Courts "are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Flowers, 513 F.3d at 558 (citations omitted). The Sixth Circuit has noted that "when the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" Id. at 558 (quoting Bituminous, 373 F.3d at 814). Therefore, "[a] district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" Id. (citation omitted).

As there is no evidence of an improper motive on the current record, the Court concludes that this factor weighs in favor of Plaintiff Aspen.

With respect to the fourth factor and its first two sub-factors, the Court concludes that the state court's resolution of the underlying factual disputes as to FCMI's allegations of theft and negligence is necessary for this Court to reach an informed resolution of the declaratory judgment and that the state trial court is in a better position to evaluate those factual disputes. Moreover, Plaintiff Aspen acknowledges that Tennessee courts have not expressly addressed the application of the policy's provisions at issue. (Docket Entry No. 22 at 4). This Court believes that a well developed record may also aid the Court on this issue.

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." Flowers, 513 F.3d at 561. The Sixth Circuit has noted that the "issues of 'insurance contract interpretation are questions of state law'" in which state courts are more familiar and in a better position to resolve. Travelers, 495 F.3d at 273 (quoting Bituminous, 373 F.3d at 815). The Sixth Circuit has observed that "'[s]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'" Bituminous, 373 F.3d at 815 (quoting Allstate Ins. v. Mercier, 913 F.2d 273, 279 (6th Cir. 1990)). Accordingly, the Court concludes that this factor weighs in favor of the Defendants.

With respect to the final factor, "whether there is an alternative remedy which is better or more effective," a party can seek declaratory judgment in Tennessee state courts. Tenn. Code. Ann. §§ 29-14-101 to 29-14-113. Thus, Plaintiff Aspen could have presented its contentions to the same court that will decide the underlying state action. "Given that the issues presented involve questions

of state law only, the state court is also in a superior position to resolve the case." Bituminous, 373 F.3d at 816 (noting that a superior alternative remedy also existed in the form of an indemnity action filed at the conclusion of the underlying state action). Moreover, this action "is in federal court based on diversity jurisdiction, there is no federal question involved, and the federal court is applying state law." West American Ins. Co. v. Prewitt, 208 F. App'x 393, 400 (6th Cir. 2006). Thus, the Court concludes that this factor weighs in favor of the Defendants.

For these reasons, the Court reaffirms its decision to stay this action. "Consistent with the nonobligatory nature of the [declaratory judgment] remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Wilton, 515 U.S. at 288. The Supreme Court has noted that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." Id. at 288 n.2; Carroll v. City of Mount Clemens, 139 F.3d 1072 (6th cir. 1998) (concluding that Younger abstention applied to a federal action seeking only monetary damages and remanding action to the district court to stay those claims under Younger); Liberty Mut. Fire Ins. Co. v. Bohms, No. 1:10-cv-1158, 2011 WL 3268608, at *8 n.5 (W.D. Mich. July 29, 2011) ("The Supreme Court has noted that, when a district court declines the exercise of declaratory judgment jurisdiction to allow parties to pursue other remedies, a stay will often be preferable to dismissal as that would allow the federal action to proceed even if a state case is time-barred.") (citing Wilton, 515 U.S. at 288).

Accordingly, the Court concludes that Plaintiff's motion to reopen and amend (Docket Entry No. 21), should be denied without prejudice.

An appropriate order is filed herewith.

**ENTERED** this the 19th day of June, 2014.

_____
William J. Haynes, Jr.
Chief United States District Judge